UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                                   )
        v.                         )    Criminal No. 14-10178-DJC
                                   )
JOHN FLEURY,                       )
                                   )
        Defendant.                 )
                                   )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    February 11, 2015

### I.    Introduction

Defendant John Fleury ("Fleury") has moved to suppress the fruits of a search conducted at his residence on May 12, 2014. D. 46. Specifically, he has moved for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) on the grounds that the affiant failed to include material information bearing upon the reliability of the confidential informant and undermining the likelihood that the firearm, the focus of the search, would be on the premises at the time of the search and the inclusion of these omissions would have eviscerated the basis for probable cause. Having considered the motion, D. 46, the supporting exhibits submitted in support of the motion, D. 46-1 to 46-6; D. 51, the government's opposition, D. 48, and counsel's arguments at the January 30, 2015 hearing, D. 50, the Court DENIES the motion. Accordingly, the Court makes its findings of fact and legal analysis below.

1

## II. Factual and Procedural Background

### A. <u>Background</u>

On May 9, 2014, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Kotchian ("SA Kotchian") applied to this Court (Dein, M.J) for a search of Fleury's residence at 83 Parkland Avenue, Lynn, Massachusetts ("Fleury's residence"). The search warrant sought "firearms, ammunition, documents and other evidence." D. 46-5 ¶ 3. The Court authorized search warrant on the same day, May 9th, and local and federal officers executed the search warrant a few days later, on May 12, 2014. The search uncovered a Walther Model PPK/S .380 caliber, semi-automatic pistol bearing the serial number S03553, assorted unidentified pills, a shoulder holster, two boxes of clear plastic sandwich bags and two ski masks. See D. 48 at 5.

Fleury was subsequently charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). D. 1, 11. This charge arises out of the May 12, 2014 seizure of the firearm from Fleury's residence, which is the subject of Fleury's motion to suppress.

### B. <u>Search Warrant Affidavit</u>

SA Kotchian submitted an affidavit in support of the search warrant application for Fleury's residence "based on [his] personal involvement in th[e] investigation, [his] training and experience, information provided to [him] by other law enforcement officers, and information provided to [him] by a confidential informant." D. 46-5 ¶ 4. The affidavit provided a brief summary of SA Kotchian's background and experience. Id. ¶¶ 1, 2. Specifically, SA Kotchian stated that he had been employed with the ATF for approximately twelve years, during which time he had been assigned to a task force focused on "federal firearms, explosives and controlled substance violations." Id. The affidavit acknowledged that it did not contain every fact known to

SA Kotchian regarding the investigation, but stated that SA Kotchian had included facts that he thought were sufficient to establish probable cause for the search. Id. ¶ 4.

With regard to the Fleury investigation, SA Kotchian attested that he had personally met and interviewed a confidential informant ("CI"), who had provided information during the course of the investigation that had been corroborated by law enforcement officers, including through the use of electronic surveillance. Id. ¶ 5. Moreover, SA Kotchian stated that this CI had "provided accurate, truthful, and reliable information to law enforcement personnel in the past." Id. ¶ 5. SA Kotchian disclosed that the CI had a criminal history that included violations for breaking and entering in the nighttime, open and gross lewdness, larceny over $250 and assault and battery with a dangerous weapon. Id. The affidavit further disclosed that the CI had told SA Kotchian that "he/she has both used and sold illegal drugs in the past." Id.

The affidavit then provided a summary of the investigation and the information obtained through the CI. Id. ¶¶ 6-10. The affidavit detailed that on April 21, 2014 the CI met with Fleury and another individual in Massachusetts. Id. ¶ 8. Prior to this meeting, SA Kotchian had provided the CI with an audio recorder and authorized the CI to record the meeting. Id. SA Kotchian was able to listen to the recording of the meeting some time later. Id. During the meeting, Fleury received a phone call from his girlfriend and, at some point during the conversation, Fleury activated the speakerphone so that the CI and the other individual could hear his girlfriend yelling at him. Id. ¶ 9. Fleury engaged in a heated argument with his girlfriend, at one point walking away from the CI and the recording device, before returning and telling the CI and the other individual about threats that his girlfriend had made against him during the telephone conversation. Id. ¶ 10. Fleury then can be heard on the recording

remembering that he left a gun at the home he shared with his girlfriend and expressing concern that she would find the weapon. Id.

Later, the CI informed SA Kotchian that on April 25, 2014 the CI observed Fleury "in possession of a silver-colored, semi-automatic pistol" inside Fleury's home. Id. ¶ 7. The affidavit explains that the CI saw Fleury remove the gun from a closet in the basement of Fleury's home, insert a loaded magazine into the pistol and then strap the pistol into a shoulder holster on his person. Id.

SA Kotchian stated in the affidavit that he reviewed Massachusetts Registry of Motor Vehicles records to confirm Fleury's home address and identity. Id. ¶ 11. Furthermore, SA Kotchian stated that he had conducted surveillance of Fleury's residence, observing a car registered to Fleury at this location. Id. ¶ 15. SA Kotchian also reviewed Fleury's criminal record maintained by the Massachusetts Criminal History Systems Board. Id. ¶ 12.

The affidavit explained that, based on SA Kotchian's training and experience, SA Kotchian knew that people who own and possess firearms usually maintain them for long periods of time, usually on their person, in their residences or in their vehicles and that a person who had a firearm in their residence as recently as two weeks ago "is highly likely to still possess a firearm in that residence." Id. ¶ 17. SA Kotchian further stated that based on his participation in the execution of other firearm-related warrants he knew that people who possess firearms usually possess other related items, including ammunition, holsters and documents reflect their dominion and control over a residence. Id. ¶¶ 18, 19. Ultimately, SA Kotchian attested that he believed that there was probable cause to believe that Fleury was in unlawful possession of a firearm and ammunition and that the property sought to be seized would be found in Fleury's residence. Id. ¶¶ 20, 21.

**III. Discussion**

    **A. Fleury Has Failed to Make a Substantial Preliminary Showing to Warrant a *Franks* Hearing**

If a defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," the Fourth Amendment requires that an evidentiary hearing, otherwise known as a Franks hearing, be held at the defendant's request to challenge the validity of the affidavit. Franks, 438 U.S. at 155-56. "To prove reckless disregard for the truth, the defendant must prove that the affiant 'in fact entertained serious doubts as to the truth' of the allegations." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir. 1984)).

        *1. Material Omissions in the Affidavit*

"A material omission of information may also trigger a Franks hearing." United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002); United States v. Cartagena, 593 F.3d 104, 112 (1st Cir. 2010). "In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination." United States v. Gifford, 727 F.3d 92, 98-99 (1st Cir. 2013) (citation omitted). Therefore, the Court must consider whether Fleury has made "'a substantial preliminary showing' that the [] omissions he identifies were 'made knowingly and intentionally' or 'with reckless disregard for the truth' and whether the omissions were 'necessary to the finding of probable cause.'" Castillo, 287 F.3d at 25 (quoting Franks, 438 U.S. at 155-56)).

Here, Fleury alleges that there were several material omissions in SA Kotchian's affidavit. Specifically, Fleury alleges that: (1) the affidavit omitted a substantial portion of the

CI's criminal history; (2) the affidavit failed to disclose that the CI is a current drug user; (3) the affidavit omitted the fact that the CI disobeyed SA Kotchian's instructions about where and when he could use the recording device that the agent had previously provided; and (4) the affidavit failed to include key information from the April 21, 2014 meeting, including that Joseph LaFratta, had advised Fleury to remove the gun from his house. Either considered alone or together, these alleged material omissions do not satisfy Fleury's substantial, preliminary showing to warrant a <u>Frank</u> hearing.

The first of these contentions relate to the veracity of the CI. Although it is correct that SA Kotchian did not recite the entirety of the CI's criminal record in the affidavit, he recounted the fact that the CI had a criminal record and gave an indication of the breadth of that record by noting that he had "multiple convictions in Massachusetts for crimes of violence, which are punishable by imprisonment for a term exceeding one year." D. 46-5 ¶ 12. Significantly, he also signaled to the magistrate judge that the specific enumeration of these convictions was not the entirety of the CI's record noting that: "[t]he CI has a criminal history that includes convictions for violations of law that include, but are not limited to, the following: Breaking & Entering in the Nighttime, Open and Gross Lewdness, Larceny Over $250.00 and Assault & Battery with a Dangerous Weapon." <u>Id.</u> ¶ 5. Fleury also argues that the omission of the certain convictions (e.g., for fraud, forgery and misuse of a credit card) were particularly egregious since those convictions are for crimes based upon deceit and, therefore, it was reckless to fail to include such information which may have undermined the reliability of the CI in the magistrate judge's eyes. D. 46 at 16. This contention, however, fails to give sufficient weight to the fact that the convictions explicitly mentioned in the affidavit included a conviction for larceny over $250, a property crime that involves some form of deceitful purloining (namely, the unlawful taking and

carrying away of the personal property of another with the specific intent to deprive the victim of the property permanently).  See e.g., Commonwealth v. Donovan, 395 Mass. 20, 25-26 (1985) (quoting Commonwealth v. Johnson, 379 Mass. 177, 181, 396 N.E.2d 974 (1979)); Commonwealth v. St. Hilaire, 470 Mass. 338 (2015) (same).  That is, based upon the information contained in the affidavit, the magistrate judge knew that the CI had a criminal history and knew that the scope of this history contained a range of crimes.

The fact that the CI may have failed to follow the agent's instructions about where or when to use the recording device is also not critical to the probable cause determination.  First, it is not clear that CI disregarded the agent's instructions or that he merely misunderstood them.  Any suggestion that he purposefully disregarded them is undercut by the fact that the CI contacted the agent en route to the April 21st meeting and informed him of his intention to record the meeting.  Second, the Court cannot agree that this single instance, whether he was disregarding instructions or was oblivious to the instructions, indicates that the CI was out of control or not worthy of being believed.

Fleury also contends that the omission of the CI's current drug use was also a material omission.  As to drug use, the affidavit noted that "[t]he CI told [SA Kotchian] that he/she has both used and sold illegal drugs in the past."  D. 46-5 ¶ 5.  Fleury contends that such statement suggests historical drug use, use that was firmly in the past, but that the recording of the April 21st meeting suggests that Fleury was still using drugs.  The defense refers to the instances in which Fleury refers to his drug use and makes statement indicating that he is using drugs during the course of the six-hour recording.  D. 46 at 3 (citing Recording of 4/21/14 Meeting at 17:30:20) ("I'm gonna do this bump").  The Court agrees with the government that the references as to the CI's recitation of drug use in the past is accurate given the timing of the

7

April 21st recording before the May 9th submission of the affidavit, but also do not suggest a reckless disregard for the truth by the affiant. There's nothing from the recording to suggestion that the CI's self reporting of drug sales and use to the affiant was untrue. See, e.g., D. 46-4 (at 17:33:00 *et seq.*). Also, given that the CI knows that the April 21st was being recorded by ATF and he was trying to maintain credibility with Fleury, there's no indication that the CI's statements reflect greater drug use as opposed to puffing for Fleury's benefit.

Even if any of these omissions would, if included, undermine the veracity of the CI, the Court does not conclude that they were critical to the probable cause determination or necessary to same because the CI's information was not the sole source of probable cause for the search warrant. This distinguishes it from cases in which the CI's information was the centerpiece of the probable cause finding. Gifford, 727 F.3d at 99 ("Where the primary basis for a probable cause determination is information provided by a confidential informant, the affidavit must provide some information from which a magistrate can credit the informant's credibility") (quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir.2002)). The agent confirmed CI's identification of Fleury's residence with surveillance and RMV records and provided the details of the CI's April 21st meeting with Fleury from the audio recording of that meeting. D. 46-5 ¶¶ 6, 8-11.

Fleury also contends that the affiant's failure to include information about the volatility of Fleury's relationship with his girlfriend also amounts to a reckless disregard for the truth. Fleury argues that the affiant failed to recount that Fleury and his girlfriend were in constant conflict and this information undermines the probable cause finding, particularly as to the requisite showing of nexus (i.e., that evidence of a crime, the firearm, would be found at the place to be searched, his residence). The affidavit does, as the defense concedes, not only a

quote from the April 21st meeting about this conflict, but also conveys the flavor of this ongoing conflict:

> During the meeting, FLEURY received a telephone call from a female, who FLEURY reported was his girlfriend. FLEURY may be heard having a conversation with his girlfriend. At some point during the conversation with his girlfriend, FLEURY activated the speakerphone function of his cell phone, so that the CI and the other individual could hear his girlfriend yelling at FLEURY. FLEURY then began to yell at his girlfriend. It appears that FLEURY walked away from the CI and the other individual because he continued to yell at his girlfriend, but his voice became distant. Shortly thereafter, FLEURY returned to the location of the CI and the other individual and he apparently had ended the telephone conversation with his girlfriend. FLEURY briefly talked about threats that his girlfriend made against him during the telephone conversation. FLEURY then recalled that he left his gun at the TARGET LOCATION and expressed concern that his girlfriend would find it inside of the TARGET LOCATION. The following is an excerpt of the conversation:
>
> > FLEURY: "Oh, shit."
> >
> > CI: "What?"
> >
> > FLEURY: "The fucking gun is in the house. But there's no clip. I took the clip out last time and left it (the gun) there. Ah, she might . . . (Unintelligible) My prints are all over it. Oh . . ."
> >
> > OTHER IND: "Would she be smart enough to pick it up with a towel?"
> >
> > FLEURY: "No. She can't pick it up. It's kind of hidden, but . . . See, the last time I left, I left on the bike. When you were supposed... So, I took the clip out and just took that (the clip). That way she can't do nothing with it. You know what I mean? And I just . . . and I left it (the clip) at my buddy's.

D. 46-5 ¶¶ 9, 10. The agent does not quote all of the discussion about this conflict or provide all of the details for their feud, and in fact that the affidavit begins by noting that he has not included each and every detail known to him and other agents. Id. ¶ 4. He does, however, disclose this conflict and even how this has affected Fleury's storage of his firearm.

9

This brings the Court to Fleury's last point, that the failure to include LaFratta's statement to Fleury, after he recounted what he had done to hide or impede the accessibility of his firearm to his girlfriend, that Fleury should remove it from his residence, is also a material omission. D. 46-4 (at 21:17:52; 21:18:40). The Court cannot agree that the inclusion of this information would have undermined probable cause for the warrant if it had been included. This statement was made on April 21st by LaFratta, not Fleury, and does not convey any intention on the defendant's part to remove the firearm from his residence. On the contrary, Fleury does not respond to LaFratta's statement by agreeing to do so and, in fact, his prior recounting of having essentially hidden the firearm and removed its clip, suggests that he was taking these steps in lieu of removing it from his residence. That is, even if this information was included, there was sufficient showing of a nexus between the firearm and the residence in affidavit, particularly in light of the additional information in the affidavit that the CI later saw the firearm at Fleury's residence on April 25th, four days after the discussion between LaFratta and Fleury.

For all of the aforementioned reasons, Fleury has not made a substantial preliminary showing that any of the alleged omissions were made with a reckless disregard for the truth or that they would have undermined the probable cause finding.

### B.   There Was Probable Cause for the Search Warrant

Having denied his motion for the Franks hearing, the Court understands that Fleury does not otherwise challenge the probable cause finding based upon the four corners of the affidavit. See United States v. Grant, 218 F.3d 72, 75 (1st Cir. 2000). The Court will briefly note, however, that the affidavit demonstrated both probable cause to believe that (1) a crime has been committed . . . and (2) enumerated evidence of the offense will be found at the place to be searched – the so-called 'nexus' element." United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir.

2005) (citation omitted).  Specifically, the affidavit detailed the April 21, 2014 meeting with the CI, Fleury and another individual, during which Fleury remembered that he had left a gun at his residence and expressed his concern that his girlfriend would find the weapon.  D. 46-5 ¶ 10.  The affidavit further detailed that the CI had subsequently observed Fleury with a weapon in his home on April 25, 2014.  Id. ¶ 7.  Moreover, SA Kotchian stated that based on his training and experience he thought that there was probable cause to believe that Fleury was in unlawful possession of a firearm and that the firearm was presently in Fleury's residence.  Id. ¶¶ 17, 20, 21.  Accordingly, based upon the totality of circumstances shown in the affidavit, it established "'a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

**IV.  Conclusion**

For the foregoing reasons, the Court DENIES Fleury's motion to suppress, D. 46.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge